# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF ARKANSAS
# FAYETTEVILLE DIVISION

**NANCY DUVALL**                                                                 **PLAINTIFF**

      v.      Civil No. 05-5001

**CITY OF ROGERS, ARKANSAS**                                                     **DEFENDANT**

## O R D E R

Now on this 20th day of December, 2005, comes on for consideration **Plaintiff's Motion For Summary Judgment** (document #11), and from said motion, the supporting documentation, and the response thereto, the Court finds and orders as follows:

1. Plaintiff alleges that she is the owner of a house located in the City of Rogers, which was destroyed by agents and employees of the City of Rogers without proper notice to her and without proper compensation therefor. The Amended Complaint pleads three counts: unlawful destruction of property, promissory estoppel, and violation of due process. Plaintiff now moves for summary judgment as to the third count, violation of due process. Defendant opposes the motion and the matter is now ripe for consideration.

2. Summary judgment should be granted when the record, viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States**, **31 F.3d 696 (8th Cir. 1994).** Summary judgment is not appropriate unless all

the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp., 45 F.3d 262 (8th Cir. 1995).** The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op, 838 F.2d 268 (8th Cir. 1988).**

3. Pursuant to **Local Rule 56.1**, plaintiff filed a statement of facts which she contends are not in dispute. Defendant agreed with some of those facts; disagreed with others; and took the position, as to several more, that they were "not supported by Affidavit or Exhibit pursuant to F.R.C.P. Rule 56 and therefore should be stricken."

Before commencing its analysis of the issues presented, the Court must, therefore, address an apparent misunderstanding of defendant as to the requirements of **Local Rule 56.1.**

**Local Rule 56.1** requires a party moving for summary judgment to "annex to the notice of motion a separate, short and concise statement of the material facts as to which it contends there is no genuine issue to be tried." Those facts are deemed admitted unless controverted by the non-moving party. The purpose of the Rule is to establish a baseline of facts which both parties can agree to,

so that the Court will have a factual starting point from which to work when reviewing the motion.

This mechanism helps the Court determine those facts on which the parties *agree* -- and those on which they do not agree. Obviously, facts agreed upon are not in dispute and do not have to be supported by affidavit or other evidence. It is only for those material facts concerning which there is a dispute that supportive evidence is required. Thus, when a material fact is not agreed upon and the moving party puts forth evidence to support his contention with respect to it, the non-moving party is obliged to respond with contrary evidence if any he has.

With respect to the motion under consideration, the Court notes that defendant did controvert plaintiff's assertions of material fact in some instances where they were not supported by affidavit or exhibit. In other instances, defendant did not controvert certain assertions -- even though they were unsupported. It thus appears that, where defendant intended to dispute or controvert facts, it did so regardless of whether those facts were supported by affidavit or exhibit. The Court, thus, believes that those facts which defendant did not specifically controvert must be deemed to have been admitted pursuant to **Local Rule 56.1.** Defendant's contention that these facts should be "stricken" because they were not properly supported is without merit and does not serve to cause the facts to be controverted. To the extent

these facts are relevant to the issues now before they Court, they are deemed to be admitted and have been included in the following statement of facts:

* On May 28, 2002, Ernie Bradford, Director of Buildings and Inspections for the City of Rogers, Arkansas, received a citizen complaint regarding a house situated on property located at 118 S. 8th Street, Rogers, Arkansas (the "Property").

* The Property is owned by the plaintiff, Nancy Duvall, who is a resident of Tennessee.

* Bradford went to the Property, and found five areas in which the house located thereon was not in compliance with the Standard Housing Code.

* Relying on **A.C.A. §14-56-203** and **Rogers City Code §42-63** ("RCC §42-63"), Bradford initiated a condemnation action against the Property.

* In a condemnation action, **A.C.A. §14-56-203** and **RCC §42-63** do not require just compensation for the destruction of a citizen's private property. **(Isn't this a conclusion of law?)**

* On or about May 29, 2002, Bradford sent Duvall a certified letter listing the five items that did not comply with the Standard Housing Code. The letter was addressed as follows: "Nancy Duvall, 5840 Ridgeline Drive, Memphis, TN 38115." The zip code on this address was incorrect, the correct zip code being 38141. The letter was returned to the City of Rogers, with a

notation by the Post Office that it was returned because there was "No Such Number."

* On or about May 30, 2002, Bradford posted a copy of the letter to Duvall, along with a legal description of the Property, on the Property itself.

* The letter sent to Duvall and posted on the Property stated that Duvall had 30 days to bring the Property into compliance, or legal action -- including condemnation -- would be taken. The letter was undated, however, and did not indicate the date of the City Council meeting at which any condemnation action would be heard. It also did not notify Duvall of any mechanism to object to the allegations of noncompliance.

* On July 9, 2002, the Rogers City Council adopted Resolution No. R-02-09 (the "Resolution"), finding that the Property was a nuisance, condemning it, and designating a city official to insure its expeditious removal.

* On July 16, 2002, Bradford sent Duvall another certified letter, to the same incorrect address, informing her of the action of the City of Rogers. This letter was also returned, marked "No Such Number."

* The City of Rogers caused the Resolution to be published in the Arkansas Democrat Gazette Northwest Edition on July 15, 2002, and July 22, 2002.

* After adoption of the Resolution, Duvall's brother Larry

Wilson learned of the condemnation and notified Duvall. Duvall authorized Wilson to act as her agent in dealing with the City of Rogers.

* On July 22, 2002, Wilson contacted Bradford. Bradford informed Wilson that if Wilson began work on abating the nuisance, or "making headway," Bradford would stop the condemnation process.

* Wilson began working on the Property shortly after speaking with Bradford. He cleaned up the house, put up screens, and repaired the ceiling.

* In February, 2003, the Fire Department notified Bradford that it intended to perform a "controlled burn" of the house located on the Property.

* Bradford went to the house to prepare it for the burn. He noticed that the windows had been screened, that bird feces had been cleaned up, and that the ceiling on the patio had been repaired. He attempted to call Wilson that day to inform him of the burn, but was unsuccessful. He did not attempt to contact Duvall about the burn.

* In preparation for the burn, agents of the City of Rogers removed various items from the house, causing damage to the structure.

* Wilson learned of the proposed burn when he observed people in the house preparing for the burn. When he objected, the burn was cancelled.

4. Duvall contends that the admitted facts in this case present two types of due process deprivations. The first comprises the events culminating in adoption of the Resolution condemning the house on the Property, and is referred to as the "pre-deprivation violation."

The second includes those events which occurred after adoption of the Resolution, and is referred to as the "post-deprivation violation." The Court will examine Duvall's motion in light of each of these claims.

5. It is axiomatic that a property owner is entitled to notice and an opportunity to be heard before government deprives her of property. **U.S. v. James Daniel Good Real Property**, **510 U.S. 43 (1993)**. The method by which notice is to be given must take into account the circumstances, but the Supreme Court has held that where the name and address of a property owner are easily ascertainable, indirect notice of condemnation (by publication or posting) does not satisfy the requirements of due process. **Schroeder v. City of New York**, **371 U.S. 208 (1962)**. In **Mullane v. Central Hanover Bank & Trust Co.**, **339 U.S. 306 (1950),** the Court explained that "when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." **339 U.S. at 314.**

On the facts shown, the Court concludes that the pre-

deprivation notice letter sent in this case did not pass constitutional muster. The City of Rogers checked the public records, obtained an address for Duvall, and mailed a certified letter to her at that address. This method of giving notice would have satisfied the requirements of due process had the letter not been returned because the address did not exist. For example, the objective of notice would have been served if the letter had been returned because the addressee no longer lived at the address, or because she refused to accept the letter. But the notation that the address did not exist should have put the City on notice that it had obtained an incorrect address, and caused those in charge of providing notice to double-check their information. Duvall offers evidence that, had the matter been investigated, her correct address could have been readily ascertained from the records of the Benton County Tax Collector. To do less amounts to insufficient notice under the circumstances.

6. Notwithstanding the foregoing comments, the Court cannot properly conclude as a matter of law that Duvall is entitled to relief on her claim of a pre-deprivation due process violation -- because the facts show that she received *actual* notice of the condemnation proceedings in time to have taken action to stop the destruction of her Property.

RCC 42-64 provides for the posting of a resolution declaring property a nuisance on the physical property which is condemned,

along with notice by certified mail to any known owner. RCC 42-65 provides that if the nuisance is not abated within 30 days of such posting, the structure "shall be torn down and/or removed by the city inspector, or by such other official, person or persons as shall be designated by the city council." The Resolution was passed on July 9, 2002. Thus no action to tear down or remove the house on the Property could begin before, at the earliest, August 9, 2002. The parties stipulated that Wilson contacted Bradford on Duvall's behalf on July 22, 2002.

From this chronology, it can be seen that Duvall knew of the condemnation at least two weeks before the earliest date on which the house could be demolished. At that point, she could have appealed the decision of the City Council in accordance with **A.C.A. §14-56-425**, which provides that appeals from final action of administrative and quasi-judicial agencies concerned with municipal building and zoning regulations may be taken to the circuit court of the appropriate county, "according to the same procedure which applies to appeals in civil actions from decisions of inferior courts. . . ." That procedure, now found in **Rule 9 of the District Court Rules** (formerly Inferior Court Rules, revised and renamed effective January 1, 2005) provides a simple procedure for taking an appeal, and allows thirty days to do so.

Where the owner of property knows of government's plan to destroy that property sufficiently in advance of the destruction to

-9-

mount a legal challenge to the decision, summary judgment in her favor is not appropriate on a claim that the destruction occurred without due process of law, regardless of how the owner learned of the decision. "The fundamental requirement of due process is the *opportunity* to be heard at a meaningful time and in a meaningful manner." **Hrock v. City of Omaha**, **4 F.3d 693 (8th Cir. 1993)**, citing **Mathews v. Eldridge**, **424 U.S. 319 (1976)**(internal quotation marks omitted). Duvall had that opportunity in the pre-deprivation period, and her motion for summary judgment as to her pre-deprivation due process claim will, therefore, be denied.

7.  Duvall also claims that her due process rights were violated by the events which occurred after adoption of the Resolution. This claim is predicated on the fact that Bradford told Wilson that if Wilson began work on abating the nuisance, or "making headway," Bradford would stop the condemnation process -- yet some months later actual destruction of the house began, without further notice to either Wilson or Duvall.

Duvall relies upon the case of **Miles v. District of Columbia**, **510 F.2d 188 (D.D.C. 1975)**. There, Miles, the owner of condemned buildings, negotiated leave to abate the nuisance rather than have the city demolish them. The condemnation order

> was followed by a six year period during which appellee attempted to restore the buildings by obtaining substantial financing after receiving several extensions of time from the Board. After the last extension expired, the Board took no action for three years except for sending a sporadic stream of threatening letters.

**510 F.2d at 192.**

The court then found that the government had followed a course of dealing which gave Miles no indication that demolition was imminent, and that she was entitled to notice and an opportunity to object once the Board made a final decision to demolish the property.

While defendant objects that **Miles** is distinguishable, the Court finds it sufficiently similar to provide reasonable guidance in the case at bar. It is undisputed:

* that Duvall employed Wilson as her agent in connection with the condemnation;

* that Wilson negotiated with Bradford and obtained assurances that he would be given an opportunity to abate the nuisance on the Property;

* that the City took no action either to demolish the house or to notify Wilson or Duvall that Wilson's abatement was insufficient between July, 2002, and February, 2003; and

* that demolition began in February, 2003, without notice to Wilson or Duvall.

On these facts, the Court concludes that Duvall was justified in believing that the abatement Wilson had undertaken was satisfactory or that, if it was not, she would be given some notice before the house was destroyed. The Court also believes that applicable law supports the notion that Duvall was entitled to such

notice before the destruction was undertaken. The Court, therefore, concludes that summary judgment in favor of Duvall on her claim of a post-deprivation due process violation is appropriate and it will be so ordered.

8. The foregoing findings do not conclude this case. The issue of damages remains to be decided -- as do the issues of liability on the remaining two counts of the Amended Complaint. It may well be that Duvall's damages would be duplicative, should she prevail on either of her remaining two causes of action, but that is not a matter for the Court to address or decide now.

**IT IS THEREFORE ORDERED** that **Plaintiff's Motion For Summary Judgment** (document #11) is **granted in part and denied in part**.

The motion is **granted** insofar as it seeks summary judgment in plaintiff's favor on the claim that her due process rights were violated after condemnation of, and in connection with the partial destruction of, a house owned by her and located at 118 S. 8th Street, Rogers, Arkansas.

The motion is **denied** insofar as it seeks summary judgment in plaintiff's favor on her claim that her due process rights were violated in connection with the adoption by the City of Rogers, Arkansas, of Resolution No. R-02-09.

**IT IS SO ORDERED.**

                                           **/s/ Jimm Larry Hendren**
                                           **JIMM LARRY HENDREN**
                                           **UNITED STATES DISTRICT JUDGE**